## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INTELLECTUAL VENTURES I, LLC;<br>INTELLECTUAL VENTURES II, LLC,<br><br>                              Plaintiffs,<br><br>v.<br><br>NETAPP, INC.,<br><br>                              Defendant. | C.A. No. 1:16-cv-10868-IT |

## DEFENDANT NETAPP, INC.'S PRELIMINARY
## INVALIDITY AND NON-INFRINGEMENT CONTENTIONS

Pursuant to Appendix E to the Local Rules (Local Rule 16.6 Supplement) and the Court's Amended Scheduling Order (Dkt. 32), Defendant NetApp, Inc. ("NetApp"), by and through its undersigned counsel, hereby sets forth its Preliminary Invalidity and Non-Infringement Contentions. These contentions respond to the Preliminary Infringement Disclosures of Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (referred to collectively herein as "IV"), served September 3, 2016. By its Preliminary Infringement Contentions, IV has asserted the following patents and claims against NetApp (collectively, the "Patents-in-Suit"):

| U.S. Patent No. | Asserted Claims |
|---|---|
| 6,516,442 ( the "'442 patent") | 1, 2, 8, 11, 12, 24, 25, 31, 34 |
| 6,775,745 (the "'745 patent") | 4 |
| 6,968,459 (the "'459 patent") | 18, 24, and 25 |
| 8,275,827 (the "'827 patent") | 1, 3, 4, 6, 8, 13, 15, and 20 |
| 6,633,945 (the "'945 patent") | 1, 6 |

### A.     Reservations of Rights

Consistent with Appendix E to the Local Rules (Local Rule 16.6 Supplement) and the Court's Amended Scheduling Order (Dkt. 32), NetApp reserves the right to amend these Invalidity Contentions.

For NetApp, discovery is ongoing, and NetApp's prior art investigation is not complete. NetApp has not yet deposed any of the named inventors of the Patents-in-Suit or begun taking discovery from relevant third parties—including the original assignees of the Patents-in-Suit. NetApp reserves the right to revise, amend, or supplement its Invalidity Contentions as it receives information from parties and third parties, consistent with the Local Rules, the Court's Amended Scheduling Order, and the Federal Rules of Civil Procedure.

Moreover, NetApp reserves the right to revise, amend, or supplement its ultimate contentions concerning the invalidity of the asserted claims, which may change depending upon the Court's construction of claim terms and/or positions that IV or its expert witnesses may take concerning claim interpretation, infringement, and/or invalidity issues. To the extent the following contentions reflect constructions of claim limitations consistent with or implicit in IV's Infringement Contentions, no inference is intended nor should any be drawn that NetApp agrees with IV's claim constructions, and NetApp expressly reserves the right to contest such claim constructions.

NetApp offers these contentions in response to IV's Infringement Contentions and without prejudice to any position NetApp may ultimately take as to any claim construction issues. In addition, these contentions are in no way an endorsement of IV's apparent infringement theories.

NetApp reserves the right to rely on any prior art included in its production, (NETAPPIV_000001 - NETAPPIV_006049) whether or not it is charted. Prior art not included in this disclosure, whether known or not known to NetApp, may later become relevant. In particular, NetApp is currently unaware of the extent, if any, to which IV

will contend that limitations of the asserted claims are not disclosed in the prior art identified by NetApp. To the extent that such an issue arises, NetApp reserves the right to identify other references that would have made the addition of the allegedly missing limitation to the disclosed device or method obvious.

Depending on the Court's construction of claim terms, and/or positions that NetApp or its expert witnesses may take concerning claim interpretation, infringement, and/or invalidity issues, different charted prior art references may be of greater or lesser relevance and different combinations of these references may be implicated. Given this uncertainty, the charts may reflect alternative applications of the prior art against the asserted claims.

## B.      Priority Dates of Asserted Patents

IV has made no specific disclosure regarding conception and reduction to practice of the Patents-in-Suit. IV's Infringement Contentions do not identify the priority dates for the Patents-in-Suit. Thus, IV simply appears to be relying upon the filing date of the Patents-in-Suit, and not an earlier date, as the priority date.[1]

NetApp has not yet had an opportunity to depose IV or the inventors and, therefore NetApp is unable at this time to evaluate any claim by IV with respect to conception and reduction to practice dates for the Patents-in-Suit and/or in their file histories. Therefore, NetApp is unable to determine the critical date(s) with respect to

---

[1] In particular, to the extent IV believes that the '945 patent is entitled to a filing date earlier than July 8, 1999 it is IV's burden to establish this earlier filing date. IV has not satisfied this burden but, for purposes of these contentions, NetApp has assumed (without conceding) that the claims of the '945 patent are entitled to a priority date of July 8, 1999.

earlier invention by other parties under 35 U.S.C. § 102(g).  NetApp accordingly relies on references that qualify as prior art based on the priority dates identified on the face of the Patents-in-Suit, and reserves its right to amend these Invalidity Contentions to account for any allegations by IV of an earlier priority date.

## C.  Invalidity for Non-Compliance with 35 U.S.C. § 101

### 1)  U.S. Patent No. 8,275,827

The '827 patent is invalid under 35 U.S.C. § 101 because it does nothing more than claim an abstract idea.  The '827 claims storing information in "unused or under-utilized storage resources" in generic computers, spread throughout a generic network. (*See* Dkt. 1-4, '827 patent, claim 1).  There is nothing technical or inventive about this idea.  Rather, the purported invention merely identifies the "capabilities of distributed devices" and uses these capabilities to "accomplish processing, storage, broadcasting or any other desired project objective."  (*Id.* at 5:54-59).

The patent does not describe a new kind of "distributed device," or a new "capability" for these distributed devices.  Instead, the "distributed devices" purportedly include "any [] computing device that has useful capabilities and is connected to a network in any manner," and that "may provide any of a number of useful capabilities to third parties once their respective capabilities are identified, organized, and managed for a desired task."  ('827 patent at 5:59-6:2).

On any reading of the patent, it is clear that the applicants simply disclosed a known distributed arrangement of computers that could be used to store data.  Their intent was not to disclose a new computer system but to monetize this known one by incentivizing owners of these computers (*e.g.,* through "frequent-flyer miles, purchase

credits and vouchers," and other "prizes") to make available their unused storage

capacity.  ('827 patent at 6:2-8, 7:6-17).  The inventors proposed utilizing the "useful

capability" of spare disk space on one's computer over the Internet (with the system

earning a broker's fee, and the computer owner, or landlord, getting some frequent flyer

coupons).  (*Id.*)

Thus, the '827 patent does not teach a new computer system, but rather teaches

how to monetize these "useful capabilities" of existing systems by incentivizing owners

of these computers to allow their devices to be utilized by third parties.  ('827 patent at

6:2-8, 7:6-17).  Nor does the '827 patent does not describe any specialized components

for accomplishing the invention but rather, relies simply on generic known components.

(*See* '827 patent at 5:54-6:2).  Thus, the '827 patent is not eligible for patent protection

and is invalid under 35 U.S.C. § 101.

**D.**     **Invalidity in View of Prior Art under 35 U.S.C. §§ 102 and 103**

NetApp asserts that the prior art listed in Exhibits A1 through E-6, individually or

in combination, invalidates the asserted claims of the Patents-in-Suit.  In addition,

NetApp incorporates by reference each of the following Inter Partes Review ("IPR")

petitions and prior art references, other exhibits and arguments cited therein.[2]

---

[2] The claim construction positions expressed by the petitioners in the IPR petitions cited
below are based on the 'broadest reasonable construction' standard applicable in such
proceedings.  *See, e.g.*, 37 C.F.R. § 42.100(b); *In re Cuozzo Speed Tech., LLC*, Case No.
14-1301, slip op. at 16, 18-19 (Fed. Cir. Feb. 2, 2015).  A different claim construction
standard applies in district court.  *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.
Cir. 2005).  Therefore, NetApp is not bound by the claim construction positions stated in
the referenced IPR petitions and reserves the right to propose different constructions in
this proceeding.

| U.S. Patent No. | Associated IPR(s) |
|---|---|
| '442 patent | • IPR2016-01106, filed 05/27/2016<br>• IPR2017-00416, filed 12/13/2016 |
| '745 patent | • IPR2016-01643, filed 08/19/2016<br>• IPR2017-00429, filed 12/13/2016 |
| '459 patent | • IPR2016-01404, filed 07/11/2016<br>• IPR2017-00467, filed 12/13/2016 |
| '827 patent | • IPR2017-00374, filed 12/13/2016 |
| '945 patent | • IPR2017-00276, filed 11/15/2016 |

To the extent any of the references cited herein is found not to predate the Patents-in-Suit, it is relevant, for example, to show the technological background and/or to secondary considerations of obviousness and/or obviousness based on simultaneous/ contemporaneous invention by others.

NetApp's identification of patents and publications as prior art herein, and in the attached charts under 35 U.S.C. §§102(a), (b), (e), and/or (g) and §103, includes patents and publications, as well as the products and systems described therein (and use thereof in the United States).  Although NetApp's investigations continue, information available to date indicates that such products and systems: (1) were known or used in this country before the alleged invention of the claimed subject matter of the asserted claims, (2) were in public use and/or on sale in this country more than one year before the filing date of the patent, and/or (3) were invented in this country by another who did not abandon, suppress, or conceal, before the alleged invention of the claimed subject matter of the asserted claim.  Upon information and belief, these prior art products and systems and their associated patents and/or printed publications individually anticipate and/or collectively render obvious each of the asserted claims.  Upon information and belief, these prior art references and products disclose each and every element of one or more of the asserted claims of the Patents-in-Suit either explicitly, inherently, or via an

obviousness combination and may also be relied upon to show the state of the art in the relevant timeframes. The date these prior art items were "offered for sale or publicly used or known," as well as "the date the offer or use of the item took place or the information became known" is at least as early as the date the related publications were published. The "identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known" includes at least those persons associated with the publication(s) or documents associated with each prior art item.

NetApp anticipates that the actual dates, circumstances, and identities of individuals will be the subject of third party discovery during this lawsuit. NetApp therefore reserves the right to modify, amend, or supplement these Invalidity Contentions if additional information becomes available during the course of discovery.

### 1)      U.S. Patent No. 6,516,442

Subject to NetApp's reservations of rights set out above, NetApp identifies the following references on which it may rely as invalidating the asserted claims of the '442 patent:

**TABLE 1: Prior Art Patents, Patent Applications, and Publications that Anticipate or Render Obvious the Asserted Claims of the '442 patent:**

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| 6,683,850 (Dunning) | U.S. | August 27, 1998 | | January 27, 2004 |
| 6,279,084 (Bandore) | U.S. | October 24, 1997 | | August 21, 2001 |
| 6,170,025 (Drottar) | U.S. | August 11, 1998 | | January 2, 2001 |
| 6,026,461 (Baxter I) | U.S. | December 9, 1998 | | February 15, 2000 |

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| 6,026,459 (Huppenthal) | U.S. | February 3, 1998 | | February 15, 2000 |
| 5,887,146 (Baxter II) | U.S. | August 12, 1996 | | March 23, 1999 |
| 5,870,538 (Manning) | U.S. | July 18, 1996 | | February 9, 1999 |
| 5,521,913 (Gridley) | U.S. | September 12, 1994 | | May 28, 1996 |
| 5,311,114 (Sambamurthy) | U.S. | October 27, 1992 | | May 10, 1994 |
| 4,845,722 (Kent) | U.S. | October 16, 1987 | | July 4, 1989 |
| 5,440,752 (Lentz) | U.S. | July 8, 1991 | | August 8, 1995 |
| 5,166,674 (Baum) | U.S. | June 21, 1991 | | November 24, 1992 |
| 5,490,250 (Reschke) | U.S. | December 31, 1991 | | February 6, 1996 |
| 5,581,729 (Nishtala) | U.S. | March 31, 1995 | | December 3, 1996 |
| 5,363,484 (Desnoyers) | U.S. | September 30, 1993 | | November 8, 1994 |
| WO 92/07335 | U.S. | October 4, 1991 | April 30, 1991 | |

**TABLE 2: Non-Patent Literature that Anticipates or Renders Obvious the Asserted Claims of the '442 patent:**

| Title | Publication Date | Author |
|---|---|---|
| "Network Protocols" (Tanenbaum) | December 1981 | Tanenbaum |
| "Cache system design in the tightly coupled multiprocessor system" (Tang) | 1976 | Tang |
| "C.mmp—A multi-mini-processor" (Wulf) | 1972 | Wulf |
| "Computer Organization and Design" (Hennessy) | 1994 | Hennessy |
| "VAX 8800 System Overview" (McInnis) | 1987 | McInnis |

| Title | Publication Date | Author |
|---|---|---|
| "2.5 Storage Controller Chip" (Muller) | 1989 | Muller |
| "Computer Architecture A Quantitative Approach" (Patterson) | 1990 | Patterson |
| "Error Control Coding: Fundamentals and Applications" (Lin) | 1983 | Lin |
| "High Performance Fault Tolerant Computer and its Fault Recovery" (Nakamikawa) | 1997 | Nakamikawa |
| "Reliable Computer Systems: Design and Evaluation) (Siewiorek 1992) | 1992 | Siewiorek |
| "Fault Tolerance in Commercial Computers" (Siewiorek 1990) | 1990 | Siewiorek |
| "Architecture of Fault-Tolerant Computers: An Historical Perspective" (Siewiorek 1991) | 1991 | Siewiorek |
| "A Class of Compatible Cache Consistency Protocols and their Support by the IEEE Futurebus" (Sweazey) | 1986 | Sweazey |
| "Early Experience with Message-Passing on the SHRIMP Multicomputer" (Felten) | May 1996 | Felten |
| "Using Cache Memory to Reduce Processor-Memory Traffic" (Goodman) | 1983 | Goodman |
| "Cache Coherence Protocols: Evaluation Using a Multiprocessor Simulation Model" (Archibald) | November 1986 | Archibald |
| "A Flexible ServerNet-based Fault-Tolerant Architecture" | 1995 | Baker |

| Title | Publication Date | Author |
|-------|-----------------|--------|
| (Baker) | | |
| "Sequoia: A Fault-Tolerant Tightly Coupled Multiprocessor for Transaction Processing" (Bernstein) | February 1988 | Bernstein |
| "Error Detecting and Error Correcting Codes" (Hamming) | April 1950 | Hamming |

In addition, NetApp hereby identifies the following non-patent system prior art that was used, known of, and/or offered for sale that anticipates or renders obvious the asserted claims of the '442 patent.  NetApp will serve third-party subpoenas for documentation relating to these prior art systems during the course of ordinary discovery, and expects that responsive productions will disclose each limitation of each asserted claims of the '442 patent:

- IBM's ESCON and FICON systems (at least as early as 1996);

- SGI Origin 200/2000 (at least as early as 1996);

- Tandem's NonStop Computer Systems (at least as early as 1976).

As illustrations of how these references invalidate all asserted claims, NetApp identifies the accompanying charts for the references listed in the table below.  The asserted claims of the '442 patent are invalid over prior art under 35 U.S.C. §§ 102 and/or 103 on the following grounds:

**TABLE 3: Identified Grounds of Invalidity for the Asserted Claims of the '442 patent:**

| Asserted Claim | Identified Grounds of Invalidity |
|----------------|----------------------------------|
| 1 | 1. Anticipated (or rendered obvious) by Kent (Ex. A-17)<br>2. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18)<br>3. Obvious over combination of Kent (Ex. A-17) in light of |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
|  | Tanenbaum (Ex. A-18) and Sambamurthy (Ex. A-20) |
|  | 4. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Gridley (Ex. A-19) |
|  | 5. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18); Sambamurthy (Ex. A-20) and Gridley (Ex. A-19) |
|  | 6. Anticipated (or rendered obvious) by Reschke (Ex. A-14) |
|  | 7. Anticipated (or rendered obvious) by Huppenthal (Ex. A-1) |
|  | 8. Anticipated (or rendered obvious) by Lentz (Ex. A-2) |
|  | 9. Anticipated (or rendered obvious) by Desnoyers (Ex. A-3) |
|  | 10. Anticipated (or rendered obvious) by Baxter I (Ex. A-7) |
|  | 11. Anticipated (or rendered obvious) by Baxter II (Ex. A-16) |
|  | 12. Anticipated (or rendered obvious) by Budde (Ex. A-5) |
|  | 13. Anticipated (or rendered obvious) by Dunning (Ex. A-6) |
|  | 14. Anticipated (or rendered obvious) by Drottar (Ex. A-12) |
|  | 15. Obvious over combination of Dunning (Ex. A-6) in light of Drottar (Ex. A-12) and/or Tanenbaum (Ex. A-18) |
|  | 16. Anticipated (or rendered obvious) by Baker (Ex. A-7) |
|  | 17. Anticipated (or rendered obvious) by Bernstein (Ex. A-8) |
|  | 18. Anticipated (or rendered obvious) by Siewiorek 1990 (Ex. A-9) |
|  | 19. Anticipated (or rendered obvious) by Siewiorek 1991 (Ex. A-10) |
|  | 20. Obvious over combination of Bernstein (Ex. A-8) in light of Siewiorek 1990 (Ex. A-9) and/or Siewiorek 1991 (Ex. A-10) |
|  | 21. Anticipated (or rendered obvious) by Baum (Ex. A-11) |
|  | 22. Obvious over combination of Baum (Ex. A-11) in light of Tanenbaum (Ex. A-18) |
|  | 23. Anticipated (or rendered obvious) by Manning (Ex. A-13) |
|  | 24. Anticipated (or rendered obvious) by VanDoren (Ex. A-15) |
| 2 | 1. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Gridley (Ex. A-19) |
|  | 2. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18); Sambamurthy (Ex. A-20) and Gridley (Ex. A-19) |
|  | 3. Obvious over combination of Reschke (Ex. A-14) in light of Tanenbaum (Ex. A-18) |
|  | 4. Obvious over combination of Huppenthal (Ex. A-1) in light of Tanenbaum (Ex. A-18) |
|  | 5. Obvious over combination of Desnoyers (Ex. A-3) in light of Tanenbaum (Ex. A-18) |
|  | 6. Anticipated (or rendered obvious) by Budde (Ex. A-5) |
|  | 7. Anticipated (or rendered obvious) by Dunning (Ex. A-6) |
|  | 8. Anticipated (or rendered obvious) by Drottar (Ex. A-12) |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| | 9. Obvious over combination of Dunning (Ex. A-6) in light of Drottar (Ex. A-12) and/or Tanenbaum (Ex. A-18)<br>10. Anticipated (or rendered obvious) by Baker (Ex. A-7)<br>11. Anticipated (or rendered obvious) by Bernstein (Ex. A-8)<br>12. Anticipated (or rendered obvious) by Siewiorek 1990 (Ex. A-9)<br>13. Anticipated (or rendered obvious) by Siewiorek 1991 (Ex. A-10)<br>14. Obvious over combination of Bernstein (Ex. A-8) in light of Siewiorek 1990 (Ex. A-9) and/or Siewiorek 1991 (Ex. A-10)<br>15. Anticipated (or rendered obvious) by Baum (Ex. A-11)<br>16. Obvious over combination of Baum (Ex. A-11) in light of Tanenbaum (Ex. A-18)<br>17. Anticipated (or rendered obvious) by Manning (Ex. A-13)<br>18. Anticipated (or rendered obvious) by VanDoren (Ex. A-15) |
| 8 | 1. Anticipated (or rendered obvious) by Kent (Ex. A-17)<br>2. Obvious over combination of Kent (Ex. A-17) Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18)<br>3. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Sambamurthy (Ex. A-20)<br>4. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Gridley (Ex. A-19)<br>5. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18); Sambamurthy (Ex. A-20) and Gridley (Ex. A-19)<br>6. Anticipated (or rendered obvious) by Huppenthal (Ex. A-1)<br>7. Anticipated (or rendered obvious) by Lentz (Ex. A-2)<br>8. Anticipated (or rendered obvious) by Baxter I (Ex. A-4)<br>9. Anticipated (or rendered obvious) by Baxter II (Ex. A-16)<br>10. Anticipated (or rendered obvious) by Budde (Ex. A-5)<br>11. Anticipated (or rendered obvious) by Dunning (Ex. A-6)<br>12. Anticipated (or rendered obvious) by Drottar (Ex. A-12)<br>13. Obvious over combination of Dunning (Ex. A-6) in light of Drottar (Ex. A-12) and/or Tanenbaum (Ex. A-18)<br>14. Anticipated (or rendered obvious) by Baker (Ex. A-7)<br>15. Anticipated (or rendered obvious) by Bernstein (Ex. A-8)<br>16. Anticipated (or rendered obvious) by Siewiorek 1990 (Ex. A-9)<br>17. Anticipated (or rendered obvious) by Siewiorek 1991 (Ex. A-10)<br>18. Obvious over combination of Bernstein (Ex. A-8) in light of Siewiorek 1990 (Ex. A-9) and/or Siewiorek 1991 (Ex. A-10)<br>19. Anticipated (or rendered obvious) by Baum (Ex. A-11)<br>20. Obvious over combination of Baum (Ex. A-11) in light of |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| | Tanenbaum (Ex. A-18) <br> 21. Anticipated (or rendered obvious) by Manning (Ex. A-13) <br> 22. Anticipated (or rendered obvious) by VanDoren (Ex. A-15) |
| 11 | 1. Anticipated (or rendered obvious) by Kent (Ex. A-17) <br> 2. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) <br> 3. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) Tanenbaum (Ex. A-18) and Sambamurthy (Ex. A-20) <br> 4. Obvious over combination of Kent (Ex. A-17) Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Gridley (Ex. A-19) <br> 5. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18); Sambamurthy (Ex. A-20) and Gridley (Ex. A-19) <br> 6. Anticipated (or rendered obvious) by Reschke (Ex. A-14) <br> 7. Anticipated (or rendered obvious) by Huppenthal (Ex. A-1) <br> 8. Anticipated (or rendered obvious) by Lentz (Ex. A-2) <br> 9. Anticipated (or rendered obvious) by Desnoyers (Ex. A-3) <br> 10. Anticipated (or rendered obvious) by Baxter I (Ex. A-4) <br> 11. Anticipated (or rendered obvious) by Baxter II (Ex. A-16) <br> 12. Anticipated (or rendered obvious) by Budde (Ex. A-5) <br> 13. Anticipated (or rendered obvious) by Dunning (Ex. A-6) <br> 14. Anticipated (or rendered obvious) by Drottar (Ex. A-12) <br> 15. Obvious over combination of Dunning (Ex. A-6) in light of Drottar (Ex. A-12) and/or Tanenbaum (Ex. A-18) <br> 16. Anticipated (or rendered obvious) by Baker (Ex. A-7) <br> 17. Anticipated (or rendered obvious) by Bernstein (Ex. A-8) <br> 18. Anticipated (or rendered obvious) by Siewiorek 1990 (Ex. A-9) <br> 19. Anticipated (or rendered obvious) by Siewiorek 1991 (Ex. A-10) <br> 20. Obvious over combination of Bernstein (Ex. A-8) in light of Siewiorek 1990 (Ex. A-9) and/or Siewiorek 1991 (Ex. A-10) <br> 21. Anticipated (or rendered obvious) by Baum (Ex. A-11) <br> 22. Obvious over combination of Baum (Ex. A-11) in light of Tanenbaum  (Ex. A-18) <br> 23. Anticipated (or rendered obvious) by Manning (Ex. A-13) <br> 24. Anticipated (or rendered obvious) by VanDoren (Ex. A-15) |
| 12 | 1. Anticipated (or rendered obvious) by Kent (Ex. A-17) <br> 2. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) <br> 3. Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Sambamurthy (Ex. A-20) |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| | 4.  Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18) and Gridley (Ex. A-19) <br> 5.  Obvious over combination of Kent (Ex. A-17) in light of Tanenbaum (Ex. A-18); Sambamurthy (Ex. A-20) and Gridley (Ex. A-19) <br> 6.  Anticipated (or rendered obvious) by Reschke (Ex. A-14) <br> 7.  Anticipated (or rendered obvious) by Huppenthal (Ex. A-1) <br> 8.  Anticipated (or rendered obvious) by Lentz (Ex. A-2) <br> 9.  Anticipated (or rendered obvious) by Desnoyers (Ex. A-3) <br> 10. Anticipated (or rendered obvious) by Baxter I (Ex. A-4) <br> 11. Anticipated (or rendered obvious) by Baxter II (Ex. A-16) <br> 12. Anticipated (or rendered obvious) by Budde (Ex. A-5) <br> 13. Anticipated (or rendered obvious) by Dunning (Ex. A-6) <br> 14. Anticipated (or rendered obvious) by Drottar (Ex. A-12) <br> 15. Obvious over combination of Dunning (Ex. A-6) in light of Drottar (Ex. A-12) and/or Tanenbaum (Ex. A-18) <br> 16. Anticipated (or rendered obvious) by Baker (Ex. A-7) <br> 17. Anticipated (or rendered obvious) by Bernstein (Ex. A-8) <br> 18. Anticipated (or rendered obvious) by Siewiorek 1990 (Ex. A-9) <br> 19. Anticipated (or rendered obvious) by Siewiorek 1991 (Ex. A-10) <br> 20. Obvious over combination of Bernstein (Ex. A-8) in light of Siewiorek 1990 (Ex. A-9) and/or Siewiorek 1991 (Ex. A-10) <br> 21. Anticipated (or rendered obvious) by Baum (Ex. A-11) <br> 22. Obvious over combination of Baum (Ex. A-11) in light of Tanenbaum (Ex. A-18) <br> 23. Anticipated (or rendered obvious) by Manning (Ex. A-13) <br> 24. Anticipated (or rendered obvious) by VanDoren (Ex. A-15) |
| 24 | *See* claim 1 |
| 25 | *See* claim 2 |
| 31 | *See* claim 8 |
| 34 | *See* claim 12 |

Invalidity charts identifying where in each item of prior art discloses each element of the asserted claims of the '442 patent are attached hereto as Exhibits A-1 through A-20. The citations included in each chart are to be considered illustrative, not exhaustive.

The references may also contain additional support upon which NetApp might rely.

Statement on Motivation to Combine

NetApp hereby identifies the following preliminary motivations to combine the references for the obviousness combinations identified in Table 3, above. NetApp reserves its right to rely upon expert testimony and revisit and expand upon the motivations to combine described herein.

The combination of Kent (Ex. A-17) and Tanenbaum (Ex. A-18) would have been obvious because Kent discloses a CRC code and teaches that reliable communications was important. Tanenbaum is a textbook that teaches how to use the CRC code to achieve reliable communications. Therefore, one of ordinary skill in the art would have looked to Tanenbaum to understand how to implement the CRC code checking.

The combination of Kent (Ex. A-17) and Sambamurthy (Ex. A-20) would have been obvious because Kent discloses Ethernet networking and Sambamurthy teaches making Ethernet a full-duplex protocol. One of ordinary skill in the art would have been motivated to implement the teachings of Sambamurthy in Kent to increase the bandwidth of the channels in Kent.

The combination of Kent (Ex. A-17) and Gridley (Ex. A-19) would have been obvious because Gridley teaching adaptive cut-through switching which is an improvement over the switching done in Kent. One of ordinary skill in the art would have been motivated to use adaptive cut-through switching in Kent to decrease wasted bandwidth.

The combination of Dunning (Ex. A-6) and Drottar (Ex. A-12) would have been obvious because both references teach to same basic system. One of ordinary skill in the

art would have been motivated to look to Dunning or Drottar for information not present in the other.

The combination of Dunning (Ex. A-6) or Drottar (Ex. A-12) with Tanenbaum (Ex. A-18) would have been obvious because Dunning and Drottar teach a network stack with a link layer; a CRC checksum; and error detection and retransmission. Tanenbaum is textbook that provides further information to those subjects and therefore one of ordinary skill in the art would be motivated to combine the teachings of Tanenbaum into Dunning and/or Drottar.

The combination of Bernstein (Ex. A-8); Siewiorek 1990 (Ex. A-9); and Siewiorek (Ex. A-10) would have been obvious because all three references discuss the same subject matter fault tolerant multiprocessor computers.  All three references cite to the same Sequoia fault-tolerant architecture. One of ordinary skill in the art would have been motivated to combine the teachings in these three references in implementing a Sequoia fault-tolerant architecture.

The combination of Baum (Ex. A-11) and Tanenbaum (Ex. A-18) would have been obvious because Baum teaches the use of a SEC/DED, a single error correct / double error detect code. Tanenbaum teaches how to recover when an error is detected. One of ordinary skill in the art would have been motivated to combine the textbook teachings of Tanenbaum in implementing a system to recover from detected errors particularly errors detected in the data field.

The combination of Huppenthal (Ex. A-1) and Tanenbaum (Ex. A-18) would have been obvious because Baum teaches the use of a SEC/DED, a single error correct / double error-detect code. Tanenbaum teaches how to recover when an error is detected.

One of ordinary skill in the art would have been motivated to combine the textbook teachings of Tanenbaum in implementing a system to recover from detected errors.

The combination of Reschke (Ex. A-14) and Tanenbaum (Ex. A-18) would have been obvious because Reschke teaches that certain errors are not correctable using ECC single bit correction. Tanenbaum teaches how to recover when an error is detected. One of ordinary skill in the art would have been motivated to combine the textbook teachings of Tanenbaum in implementing a system to recover from detected errors that are not single bit error or errors not correctable using ECC alone.

The combination of Desnoyers (Ex. A-3) and Tanenbaum (Ex. A-18) would have been obvious because Desnoyers teaches the use of communication links, e.g. a HIPPI link. Tanenbaum teaches how to achieve reliable communication over a network link. One of ordinary skill in the art would have been motivated to combine the textbook teachings of Tanenbaum in the communication links of Desnoyers to achieve reliable communication. One of ordinary skill in the art would understand that reliable communications would be important in the system disclosed in Desnoyers.

2)      **U.S. Patent No. 6,775,745**

Subject to NetApp's reservations of rights set out above, NetApp identifies the following references on which it may rely as invalidating the asserted claims of the '745 patent:

**TABLE 4: Prior Art Patents, Patent Applications, and Publications that Anticipate or Render Obvious the Asserted Claims of the '745 patent:**

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| US Publication No. 2002/0078300 | U.S. | August 16, 1999 | June 20, 2002 | |

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| (Dharap) | | | | |
| US 6,738,865 (Burton) | U.S. | June 9, 2000 | | May 18, 2004 |
| US 5,043,885 (Robinson II) | US | August 8, 1989 | | August 27, 1991 |

**TABLE 5: Non-Patent Literature that Anticipates or Renders Obvious the Asserted Claims of the '745 patent:**

| Title | Publication Date | Author |
|---|---|---|
| "Implementation and Performance Evaluation of the LRFU Replacement Policy" to Lee et al. (Lee) | 1997 | Lee |
| "Caching Strategies to Improve Disk System Performance" to Karedla et al. in *Computer* (Karedla) | March 1994 | Karedla |
| "Data Cache Management Using Frequency-Based Replacement," to Robinson et al., Proc. of the 1990 ACM SIGMETRICS Conference on Measurement and Modeling of Computer Systems. (Robinson I) | May 1990 | Robinson |
| "Scalability in the XFS File System," to Sweeney et al., Proc. of the USENIX 1996 Annual Technical Conference. (Sweeney) | January 1996 | Sweeney |
| "Cache Memories" to Alan J. Smith, ACM Computing Surveys, Vol. 14, No. 3. (Smith I) | September 1982 | Alan J. Smith |
| "UNIX Implementation," to K. Thompson, Bell System Technical Journal, Vol. 57, No. 6, pp. 1931-1945. (Thompson) | 1978 | Ken Thompson |
| "The Design and Implementation of the 4.4 | 1996 | Marshall K. McKusick et al. |

| Title | Publication Date | Author |
|---|---|---|
| BSD Operating System" to McKusick et al., Chapter 6, Section 6.6, Addison-Wesley Publishing Company. (McKusick I) | | |
| "Sequentiality and Prefetching in Database Systems," to Alan J. Smith, ACM Transactions on Database Systems, Vol. 3, No. 3, pp. 223-247. (Smith II) | Sept. 1978 | Alan J. Smith |
| "Informed Prefetching and Caching," to R. Hugo Patterson et al., Proc. of the 15th ACM Symp. on Operating System Principles. (Patterson) | December 1995 | R. Hugo Patterson et al. |
| A Fast File System for UNIX," to Marshal McKusick et al., ACM Transactions on Computer Systems (TOCS), Vol. 2, No. 3, pp. 181-197. (McKusick II) | August 1984 | Marshal McKusick, et al. |
| Extent-like Performance from a UNIX file System," to L. W. McVoy et al., Proc. of the Winter USENIX Technical Conference. (McVoy) | 1991 | McVoy et al. |

In addition, NetApp hereby identifies the following non-patent system prior art that was used, known of, and/or offered for sale that anticipates or renders obvious the asserted claims of the '745 patent.  NetApp will serve third-party subpoenas for documentation relating to these prior art systems during the course of ordinary discovery, and expects that responsive productions will disclose each limitation of each asserted claims of the '745 patent:

- UNIX operating system (at least as early as 1986).

As illustrations of how these references invalidate all asserted claims, NetApp identifies the accompanying charts for the references listed in the table below. The asserted claims of the '745 patent are invalid over prior art under 35 U.S.C. §§ 102 and/or 103 on the following grounds:

**TABLE 6: Identified Grounds of Invalidity for the Asserted Claims of the '745 patent:**

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| 4 | 1. Obvious over the combination of Burton (Ex. B-1) in view of Karedla (Ex. B-4)<br>2. Obvious over the combination of Burton (Ex. B-1) in view of Sweeney (Ex. B-3)<br>3. Obvious over the combination of Lee in view of Dharap (Ex. B-2) and Karedla (Ex. B-4)<br>4. Obvious over the combination of Lee in view of Dharap (Ex. B-2) and Sweeney (Ex. B-3)<br>5. Obvious over the combination of Karedla (Ex. B-4) in view of Robinson (Ex. B-5)<br>6. Lee (Ex. B-6) in view of Dharap (Ex. B-2), Karedla (Ex. B-4), Robinson (Ex. B-5)<br>7. Lee (Ex. B-6) in view of Dharap (Ex. B-2), Sweeney (Ex. B-3), Robinson (Ex. B-5) |

Invalidity charts identifying where in each item of prior art discloses each element of the asserted claims of the '745 patent are attached hereto as Exhibits B-1 through B-6. The citations included in each chart are to be considered illustrative, not exhaustive. The references may also contain additional support upon which NetApp might rely.

Statement on Motivation to Combine

NetApp hereby identifies the following preliminary motivations to combine the references for the obviousness combinations identified in Table 6, above. NetApp reserves its right to rely upon expert testimony and revisit and expand upon the motivations to combine described herein.

The combination of Burton (Ex. B-1) and Karedla (Ex. B-4) would have been obvious because one of ordinary skill in the art would readily recognize the benefits of implementing Karedla's teaching of "prefetching" in Burton's cache architecture, to further decrease latency and increase performance in a computer architecture system that implements the caching architecture of Burton.

The combination of Burton (Ex. B-1) and Sweeney (Ex. B-3) would have been obvious because one of ordinary skill in the art would readily recognize the benefits of implementing Sweeney's teaching of a system with scalable capacity and performance in supporting large files in Burton's cache architecture.

One of ordinary skill in the art would be readily motivated to combine the system of Lee (Ex. B-5) with the target capacity being reached feature of Dharap (Ex. B-2) because it is valuable to utilize a cache replacement policy that is invoked when the cache is full, or the target capacity is reached, which minimizes cache latency and thereby enhances computer performance.  In addition, one of ordinary skill in the art would have been motivated to combine the teachings of Lee and Dharap with Karedla (Ex. B-4), to implement prefetching in Lee's cache architecture, and further decrease latency and increase performance in a computer architecture system that implements Lee's caching architecture.  In addition, one of ordinary skill in the art would have been motivated to combine the teachings of Lee and Dharap with Sweeney (Ex. B-3), to implement Sweeney's teaching of a system with scalable capacity and performance in supporting large files in Lee's caching architecture.

The combination of Karedla (Ex. B-4) and Robinson (Ex. B-5) would have been obvious to one of ordinary skill in the art because Karedla expressly references at least

Robinson I.  Further, one of ordinary skill in the art would have been motivated to combine Robinson's teaching of the Robinson FBR algorithm with the prefetching strategies of Karedla to provide a more efficient and flexible cache memory implementation.

**3)      U.S. Patent No. 6,968,459**

Subject to NetApp's reservations of rights set out above, NetApp identifies the following references on which it may rely as invalidating the asserted claims of the '459 patent:

**TABLE 7: Prior Art Patents, Patent Applications, and Publications that Anticipate or Render Obvious the Asserted Claims of the '459 patent:**

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| 6,460,138 (Morris) | U.S. | October 5, 1998 | | October 1, 2002 |
| 5,677,952 (Blakley) | U.S. | December 6, 1994 | | October 14, 1997 |
| 5,533,125 (Bensimon) | U.S. | July 18, 1995 | | July 2, 1996 |
| 6,738,877 (Yamakawa) | U.S. | March 31, 1999 | | May 18, 2004 |
| 6,061,799 (Eldridge) | U.S. | October 31, 1997 | | May 9, 2000 |
| 5,499,295 (Cooper) | U.S. | August 31, 1993 | | March 12, 1996 |
| 6,782,190 (Morito) | U.S. | September 2, 1999 | | August 24, 2004 |
| 5,237,609 (Kimura) | U.S. | March 26, 1990 | | August 17, 1993 |
| 5,825,878 (Takahashi) | U.S. | September 20, 1996 | | October 20, 1998 |
| 7,124,301 (Uchida) | U.S. | August 25, 1998 | | October 17, 2006 |
| 6,212,635 (Reardon) | U.S. | July 14, 1998 | | April 3, 2001 |
| 6,012,145 (Mathers) | U.S. | November 14, 1994 | | January 4, 2000 |

**TABLE 8: Non-Patent Literature that Anticipates or Renders Obvious the Asserted Claims of the '459 patent:**

| Title | Publication Date | Author |
|---|---|---|
| "Challenges for Copyright in a Digital Age" (Bramhill) | April 1997 | Bramhill |

In addition, NetApp hereby identifies the following non-patent system prior art that was used, known of, and/or offered for sale that anticipates or renders obvious the asserted claims of the '459 patent.  NetApp will serve third-party subpoenas for documentation relating to these prior art systems during the course of ordinary discovery, and expects that responsive productions will disclose each limitation of each asserted claims of the '442 patent:

- Oracle Sun Ray system (at least as early as 1999).
- Imation LS-120 SuperDisk 300 (at least as early as 1998)

As illustrations of how these references invalidate all asserted claims, NetApp identifies the accompanying charts for the references listed in the table below.  The asserted claims of the '459 patent are invalid over prior art under 35 U.S.C. §§ 102 and/or 103 on the following grounds:

**TABLE 9: Identified Grounds of Invalidity for the Asserted Claims of the '459 patent:**

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| 18 | 1. Rendered obvious by Blakley (Ex. C-1)<br>2. Rendered obvious by Uchida (Ex. C-2)<br>3. Rendered obvious by Reardon (Ex. C-4)<br>4. Rendered obvious by Eldridge (Ex. C-9)<br>5. Obvious over the combination of Blakley (Ex. C-1) and Bramhill (Ex. C-3)<br>6. Obvious over the combination of Uchida (Ex. C-2) and Bramhill (Ex. C-3)<br>7. Obvious over the combination of Bensimon (Ex. C-6) and Takahashi (Ex. C-7)<br>8. Obvious over the combination of Kimura (Ex. C-5) and Takahashi (Ex. C-7) |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| | 9. Obvious over the combination of Eldridge (Ex. C-9) and Bramhill (Ex. C-3)<br>10. Obvious over the combination of Reardon (Ex. C-4) and Takahashi (Ex. C-7)<br>11. Obvious over the combination of Yamakawa (Ex. C-8) and Bramhill (Ex. C-3) |
| 24 | 1. Rendered obvious by Blakley (Ex. C-1)<br>2. Rendered obvious by Uchida (Ex. C-2)<br>3. Rendered obvious by Reardon (Ex. C-4)<br>4. Rendered obvious by Eldridge (Ex. C-9)<br>5. Obvious over the combination of Blakley (Ex. C-1) and Bramhill (Ex. C-3)<br>6. Obvious over the combination of Uchida (Ex. C-2) and Bramhill (Ex. C-3)<br>7. Obvious over the combination of Bensimon (Ex. C-6) and Takahashi (Ex. C-7)<br>8. Obvious over the combination of Kimura (Ex. C-5) and Takahashi (Ex. C-7)<br>9. Obvious over the combination of Eldridge (Ex. C-9) and Bramhill (Ex. C-3)<br>10. Obvious over the combination of Reardon (Ex. C-4) and Takahashi (Ex. C-7)<br>11. Obvious over the combination of Yamakawa (Ex. C-8) and Bramhill (Ex. C-3) |
| 25 | 1. Rendered obvious by Blakley (Ex. C-1)<br>2. Rendered obvious by Uchida (Ex. C-2)<br>3. Rendered obvious by Reardon (Ex. C-4)<br>4. Rendered obvious by Eldridge (Ex. C-9)<br>5. Obvious over the combination of Blakley (Ex. C-1) and Bramhill (Ex. C-3)<br>6. Obvious over the combination of Uchida (Ex. C-2) and Bramhill (Ex. C-3)<br>7. Obvious over the combination of Bensimon (Ex. C-6) and Takahashi (Ex. C-7)<br>8. Obvious over the combination of Kimura (Ex. C-5) and Takahashi (Ex. C-7)<br>9. Obvious over the combination of Eldridge (Ex. C-9) and Bramhill (Ex. C-3)<br>10. Obvious over the combination of Reardon (Ex. C-4) and Takahashi (Ex. C-7)<br>11. Obvious over the combination of Yamakawa (Ex. C-8) and Bramhill (Ex. C-3) |

Invalidity charts identifying where in each item of prior art discloses each element of the asserted claims of the '459 patent are attached hereto as Exhibits C-1 through C-9. The citations included in each chart are to be considered illustrative, not exhaustive. The references may also contain additional support upon which NetApp might rely.

Statement on Motivation to Combine

NetApp hereby identifies the following preliminary motivations to combine the references for the obviousness combinations identified in Table 9, above.  NetApp reserves its right to rely upon expert testimony and revisit and expand upon the motivations to combine described herein.

The combination of Blakley (Ex. C-1) and Bramhill (Ex. C-3) would have been obvious because Blakley teaches a method of securing and protecting information on a computer storage device using a pseudorandom bit string that is based on both "user-specific" information, *e.g.*, a password entered by an authorized user, and an index that uniquely identifies the location of data within the storage device and Bramhill teaches securing and protecting information on a computer using cybermetrics or "device-specific security information," which likewise can include the location of data within the storage device and the use of "bad sectors."

The combination of Uchida (Ex. C-2) and Bramhill (Ex. C-3) would have been obvious because Uchida teaches a method for protecting data on a removable storage device through the use of passwords and encryption and Bramhill teaches securing and protecting information on a computer using cybermetrics or "device-specific security information," which likewise can include the location of data within the storage device and the use of "bad sectors" and teaches encryption.

The combination of Bensimon (Ex. C-6) and Takahashi (Ex. C-7) would have been obvious because Bensimon teaches a method of securing and protecting information on a computer storage device through secure access to a device and Takahashi teaches securing and protecting information on a computer storage device by encrypting data on the device if an unauthorized user were to gain access to computer data.

The combination of Kimura (Ex. C-5) and Takahashi (Ex. C-7) would have been obvious because Kimura teaches a method of securing and protecting information on a computer storage device through secure access to a device and Takahashi teaches securing and protecting information on a computer storage device by encrypting data on the device if an unauthorized user were to gain access to computer data.

The combination of Eldridge (Ex. C-9) and Bramhill (Ex. C-3) would have been obvious because Eldridge teaches a method for protecting data on a removable storage device through the use of passwords and encryption and Bramhill teaches securing and protecting information on a computer using cybermetrics or "device-specific security information," which likewise can include the location of data within the storage device and the use of "bad sectors" and teaches encryption.

The combination of Reardon (Ex. C-4) and Takahashi (Ex. C-7) would have been obvious because Reardon teaches a method for protecting data through the use of user-specific information and device-specific information stored on a removable storage device and Takahashi teaches securing and protecting information on a computer storage device by encrypting data on the device if an unauthorized user were to gain access to computer data.

The combination of Yamakawa (Ex. C-8) and Bramhill (Ex. C-3) would have been obvious because Yamakawa teaches a method for protecting data on a removable storage device through the use of passwords and Bramhill teaches securing and protecting information on a computer using cybermetrics or "device-specific security information," which likewise can include the location of data within the storage device and the use of "bad sectors" and teaches encryption.

### 4) U.S. Patent No. 8,275,827

Subject to NetApp's reservations of rights set out above, NetApp identifies the following references on which it may rely as invalidating the asserted claims of the '827 patent:

**TABLE 10: Prior Art Patents, Patent Applications, and Publications that Anticipate or Render Obvious the Asserted Claims of the '827 patent:**

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| 5,987,506 (Carter) | U.S. | May 2, 1997 | | Nov. 16, 1999 |
| International Application WO 98/22881 (Carter I) | WO | | May 28, 1998 | |
| 6,098,091 (Kisor) | U.S. | Dec. 30, 1996 | | Aug., 1, 2000 |
| 7,062,765 (Pitzel) | U.S. | May 25, 1999 | | June 13, 2006 |
| 5,909,540 (Carter (US)) | U.S. | May 2, 1997 | | June 1, 1999 |

**TABLE 11: Non-Patent Literature that Anticipates or Renders Obvious the Asserted Claims of the '827 patent:**

| Title | Publication Date | Author |
|---|---|---|
| "Oceanstore: An Architecture for Global-Scale Persistent Storage," in ASPLOS-IX proceedings: | Stamped November 20, 2000 by the University of Michigan | Kubiatowicz, John *et al.* |

| Title | Publication Date | Author |
|---|---|---|
| Ninth International Conference on Architectural Support for Programming Languages and Operating Systems ("Oceanstore") | | |
| "Condor – A Hunter of Idle Workstations" in Computer Sciences Technical Report #730 ("Condor") | December 1987 | Litzkow, Michael J., *et al.* |
| "Severless Network File Systems" ("Anderson") | December 1995 | Anderson, Thomas E., *et al.* |

In addition, NetApp hereby identifies the following non-patent system prior art that was used, known of, and/or offered for sale that anticipates or renders obvious the asserted claims of the '827 patent. NetApp will serve third-party subpoenas for documentation relating to these prior art systems during the course of ordinary discovery, and expects that responsive productions will disclose each limitation of each asserted claims of the '827 patent:

- MangoSoft Medley (at least as early as 1998);

- Digital Equipment Corporation Petal system (at least as early as 1996);

- IBM Tiger Shark (at least as early as 1998);

- IBM Global Parallel File System (at least as early as 1998);

As illustrations of how these references invalidate all asserted claims, NetApp identifies the accompanying charts for the references listed in the table below. The asserted claims of the '827 patent are invalid over prior art under 35 U.S.C. §§ 102 and/or 103 on the following grounds:

**TABLE 12: Identified Grounds of Invalidity for the Asserted Claims of the '827 patent:**

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| 1 | 1.  Anticipated and/or rendered obvious by Oceanstore (Ex. D-1)<br>2.  Rendered obvious by Condor (Ex. D-2)<br>3.  Anticipated and/or rendered obvious by Carter (Ex. D-3)<br>4.  Rendered obvious by Kisor (Ex. D-4)<br>5.  Rendered obvious by Pitzel (Ex. D-5)<br>6.  Anticipated and/or rendered obvious by Anderson (Ex. D-6)<br>7.  Anticipated and/or rendered obvious by Carter (US) (Ex. D-7)<br>8.  Obvious over the combination of Carter (Ex. D-3) and Condor (Ex. D-2)<br>9.  Obvious over the combination of Carter (Ex. D-3) and Oceanstore (Ex. D-1)<br>10. Obvious over the combination of Carter (Ex. D-3) and Pitzel (Ex. D-5)<br>11. Obvious over the combination of Carter (Ex. D-3) and Kisor (Ex. D-4)<br>12. Obvious over the combination of Condor (Ex. D-2) and Oceanstore (Ex. D-1)<br>13. Obvious over the combination of Condor (Ex. D-2) and Pitzel (Ex. D-5)<br>14. Obvious over the combination of Condor (Ex. D-2) and Kisor (Ex. D-4)<br>15. Obvious over the combination of Oceanstore (Ex. D-1) and Pitzel (Ex. D-5)<br>16. Obvious over the combination of Oceanstore (Ex. D-1) and Kisor (Ex. D-4)<br>17. Obvious over the combination of Pitzel (Ex. D-5) and Kisor (Ex. D-4)<br>18. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), and Oceanstore (Ex. D-1)<br>19. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), and Pitzel (Ex. D-5)<br>20. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), and Kisor (Ex. D-4)<br>21. Obvious over the combination of Carter (Ex. D-3), Oceanstore (Ex. D-1), Pitzel (Ex. D-5)<br>22. Obvious over the combination of Carter (Ex. D-3), Oceanstore (Ex. D-1), and Kisor (Ex. D-4)<br>23. Obvious over the combination of Carter (Ex. D-3), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>24. Obvious over the combination of Condor (Ex. D-2), Oceanstore (Ex. D-1), and Pitzel (Ex. D-5) |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
|  | 25. Obvious over the combination of Condor (Ex. D-2), Oceanstore (Ex. D-1), and Kisor (Ex. D-4)<br>26. Obvious over the combination of Condor (Ex. D-2), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>27. Obvious over the combination of Oceanstore (Ex. D-1), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>28. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), Oceanstore (Ex. D-1), and Pitzel (Ex. D-5)<br>29. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), Oceanstore (Ex. D-1), and Kisor (Ex. D-4)<br>30. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>31. Obvious over the combination of Carter (Ex. D-3), Oceanstore (Ex. D-1), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>32. Obvious over the combination of Condor (Ex. D-2), Oceanstore (Ex. D-1), Pitzel (Ex. D-5), and Kisor (Ex. D-4)<br>33. Obvious over the combination of Carter (Ex. D-3), Condor (Ex. D-2), Oceanstore (Ex. D-1), Pitzel (Ex. D-5), and Kisor (Ex. D-4) |
| 3 | *See* claim 1 |
| 4 | *See* claim 1 |
| 6 | *See* claim 1 |
| 8 | *See* claim 1 |
| 13 | *See* claim 1 |
| 15 | *See* claim 1 |
| 20 | *See* claim 1 |

Invalidity charts identifying where in each item of prior art discloses each element of the asserted claims of the '827 patent are attached hereto as Exhibits D-1 through D-7. The citations included in each chart are to be considered illustrative, not exhaustive. The references may also contain additional support upon which NetApp might rely.

Statement on Motivation to Combine

NetApp hereby identifies the following preliminary motivations to combine the references for the obviousness combinations identified in Table 12, above.  NetApp reserves its right to rely upon expert testimony and revisit and expand upon the motivations to combine described herein.

Each of Oceanstore (Ex. D-1), Condor (Ex. D-2), Carter (Ex. D-3), Kisor (Ex. D-4), and Pitzel (Ex. D-5) would have been recognized by one of ordinary skill in the art as disclosing making otherwise unused, networked computer resources  available for use by other network devices.  For example, in Condor (Ex. 2), network devices could "volunteer" their unused capacity to other devices connected to the network when the volunteer computers were otherwise idle.  Similarly to Condor (Ex. D-2), Oceanstore (Ex. D-1) sought to take advantage of the excess, or unused, storage resources on desktop workstations and the like.  Carter (Ex. D-3) taught the management of a portion of each node's available storage space (e.g., unused hard drive space) and communication with other nodes over the network in order to pool each node's unused space together to create a shared pool of storage that is accessible by each of the participating computers.  Kisor (Ex. D-4) taught a central computer that assigns and distributes tasks to idle workstations in a wide area network (WAN), in which the central computer determines the availability and capabilities of the remote computers.  One of ordinary skill in the art would have been motivated to combine any one or more of these references to design a system disclosed by each of the asserted claims of the '827 patent.

5)    **U.S. Patent No. 6,633,945**

Subject to NetApp's reservations of rights set out above, NetApp identifies the

following references on which it may rely as invalidating the asserted claims of the '945

patent:

**TABLE 13: Prior Art Patents, Patent Applications, and Publications that Anticipate
or Render Obvious the Asserted Claims of the '945 patent:**

| Number | Country of Origin | Filing Date | Publication Date | Issue Date |
|---|---|---|---|---|
| 5,394,555 (Hunter) | U.S. | December 23, 1992 | | February 28, 1995 |
| 6,085,295 (Ekanadham) | U.S. | October 20, 1997 | | July 4, 2000 |
| 5,490,250 (Reschke) | U.S. | December 31, 1991 | | February 6, 1996 |
| 6,055,605 (Sharma) | U.S. | October 24, 1997 | | April 25, 2000 |
| 5,440,752 (Lentz) | U.S. | July 8, 1991 | | August 8, 1995 |
| 5,754,877 (Hagersten) | U.S. | July 2, 1996 | | May 19, 1998 |
| 5,834,922 (Ikawa) | U.S. | February 23, 1996 | | November 10, 1998 |

**TABLE 14: Non-Patent Literature that Anticipates or Renders Obvious the
Asserted Claims of the '945 patent:**

| Title | Publication Date | Author |
|---|---|---|
| Characterizing Shared Memory and Communication Performance: A Case Study of the Convex SPP–1000 (Abandah) | January 8, 1996 | Geith A. Abandah et al. |
| System Overview of the SGI Origin 200/2000 Product Line (Laudon) | February 23, 1997 | James Laudon et al. |

In addition, NetApp hereby identifies the following non-patent system prior art

that was used, known of, and/or offered for sale that anticipates or renders obvious the

asserted claims of the '442 patent.  NetApp will serve third-party subpoenas for

documentation relating to these prior art systems during the course of ordinary discovery, and expects that responsive productions will disclose each limitation of each asserted claims of the '442 patent:

- IBM's 360/65 system (at least as early as 1965);

- Convex SPP-1000 (at least as early as 1995);

- Cray X-MP (at least as early as 1982);

- Stanford DASH (directory architecture for shared memory) (at least as early as 1992);

- SGI Origin 200/2000 (at least as early as 1996).

As illustrations of how these references invalidate all asserted claims, NetApp identifies the accompanying charts for the references listed in the table below.  The asserted claims of the '945 patent are invalid over prior art under 35 U.S.C. §§ 102 and/or 103 on the following grounds:

**TABLE 15: Identified Grounds of Invalidity for the Asserted Claims of the '945 patent:**

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| 1 | 1.  Rendered obvious by Sharma (Ex. E-3)<br>2.  Rendered obvious by Ekanadham (Ex. E-2)<br>3.  Rendered obvious by Laudon (Ex. E-5)<br>4.  Rendered obvious by Abandah (Ex. E-4)<br>5.  Rendered obvious by Hunter (Ex. E-1)<br>6.  Rendered obvious by Hagersten (Ex. E-6)<br>7.  Obvious over the combination of Sharma (Ex. E-3) and Hagersten (Ex. E-6)<br>8.  Obvious over the combination of Ekanadham (Ex. E-2) and Hagersten (Ex. E-6)<br>9.  Obvious over the combination of Laudon (Ex. E-5) and Hagersten (Ex. E-6)<br>10. Obvious over the combination of Abandah (Ex. E-4) and Hagersten (Ex. E-6)<br>11. Obvious over the combination of Sharma (Ex. E-3) and |

| Asserted Claim | Identified Grounds of Invalidity |
|---|---|
| | Hunter (Ex. E-1)<br>12. Obvious over the combination of Ekanadham (Ex. E-2) and Hunter (Ex. E-1)<br>13. Obvious over the combination of Laudon (Ex. E-5) and Hunter (Ex. E-1)<br>14. Obvious over the combination of Abandah (Ex. E-4) and Hunter (Ex. E-1) |
| 6 | 15. Rendered obvious by Sharma (Ex. E-3)<br>16. Rendered obvious by Ekanadham (Ex. E-2)<br>17. Rendered obvious by Laudon (Ex. E-5)<br>18. Rendered obvious by Abandah (Ex. E-4)<br>19. Rendered obvious by Hunter (Ex. E-1)<br>20. Rendered obvious by Hagersten (Ex. E-6)<br>21. Obvious over the combination of Sharma (Ex. E-3) and Hagersten (Ex. E-6)<br>22. Obvious over the combination of Ekanadham (Ex. E-2) and Hagersten (Ex. E-6)<br>23. Obvious over the combination of Laudon (Ex. E-5) and Hagersten (Ex. E-6)<br>24. Obvious over the combination of Abandah (Ex. E-4) and Hagersten (Ex. E-6)<br>25. Obvious over the combination of Sharma (Ex. E-3) and Hunter (Ex. E-1)<br>26. Obvious over the combination of Ekanadham (Ex. E-2) and Hunter (Ex. E-1)<br>27. Obvious over the combination of Laudon (Ex. E-5) and Hunter (Ex. E-1)<br>28. Obvious over the combination of Abandah (Ex. E-4) and Hunter (Ex. E-1) |

Invalidity charts identifying where in each item of prior art discloses each element of the asserted claims of the '945 patent are attached hereto as Exhibits E-1 through E-6. The citations included in each chart are to be considered illustrative, not exhaustive. The references may also contain additional support upon which NetApp might rely.

Statement on Motivation to Combine

NetApp hereby identifies the following preliminary motivations to combine the references for the obviousness combinations identified in Table 15, above.  NetApp

reserves its right to rely upon expert testimony and revisit and expand upon the motivations to combine described herein.

The combination of Sharma (Ex. E-3) and Hagersten (Ex. E-6) would have been obvious because Sharma teaches a multinode SMP system and Hagersten teaches connecting nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hagersten would have provided for reduced latency in remote memory requests.

The combination of Ekanadham (Ex. E-2) and Hagersten (Ex. E-6) would have been obvious because Ekanadham teaches a multinode SMP system without a clear description of how to connect the nodes.  Hagersten provides an example mode of connection, a point-to-point connection between nodes in an SMP system.

The combination of Laudon (Ex. E-5) and Hagersten (Ex. E-6) would have been obvious because Laudon teaches a multinode SMP system and Hagersten teaches connecting nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hagersten would have provided for reduced latency in remote memory requests.

The combination of Abandah (Ex. E-4) and Hagersten (Ex. E-6) would have been obvious because Abandah teaches a multinode SMP system and Hagersten teaches connecting nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hagersten would have provided for reduced latency in remote memory requests.

The combination of Sharma (Ex. E-3) and Hunter (Ex. E-1) would have been obvious because Sharma teaches a multinode SMP system and Hunter teaches connecting

nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hunter would have provided for reduced latency in remote memory requests.

The combination of Ekanadham (Ex. E-2) and Hunter (Ex. E-1) would have been obvious because Ekanadham teaches a multinode SMP system without a clear description of how to connect the nodes.  Hunter provides an example mode of connection, a point-to-point connection between nodes in an SMP system.

The combination of Laudon (Ex. E-5) and Hunter (Ex. E-1) would have been obvious because Laudon teaches a multinode SMP system and Hunter teaches connecting nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hunter would have provided for reduced latency in remote memory requests.

The combination of Abandah (Ex. E-4) and Hunter (Ex. E-1) would have been obvious because Abandah teaches a multinode SMP system and Hunter teaches connecting nodes in an SMP system using point-to-point connections.  The point-to-point connections of Hunter would have provided for reduced latency in remote memory requests.

**E.      Invalidity for Non-Compliance with 35 U.S.C. § 112**

      **1)      U.S. Patent No. 6,516,442**

Asserted claims 24, 25, 31, and 34 are invalid under 35 U.S.C. § 112, second paragraph, as being indefinite. Each of claims 24 and 34 recite "the interfaces" however switch interfaces, microprocessor interfaces and memory interfaces have been introduced prior to the use of "the interfaces," and it is unclear which of the previously identified

interfaces are included in the claim element "the interfaces."  Accordingly, claims 24, 25, 31, and 34 of the '442 Patent are invalid under at least 35 U.S.C. § 112, second paragraph.

Asserted claims 1, 2, 8, 11, and 12, are invalid under 35 U.S.C. § 112, first paragraph, as lacking written description as well as under 35 U.S.C. § 112, second paragraph, as being indefinite.  Each of claims 1, 2, 8, 11, and 12 recites "[switch/microprocessor/memory/bus] interface[s] configured to … perform error correction."   It is not clear if a single interface must perform all the steps of an error correction or if two interfaces communicate to perform error correction.  The specification discloses that the steps of error correction are performed by two interfaces communicating with each other, yet the claims require that each interface be configured to perform error correction.  ('442 Patent 20:15-32).  Earlier claim language recited a "packet protocol with error correction," yet the Applicant turned away from such language, rendering the current claim scope both indefinite, and lacking written description.

Asserted claim 2 is invalid under 35 U.S.C. § 112, second paragraph, as being indefinite.  Claim 2 recites "The shared-memory multi-processor system of claim 1 wherein the interfaces are configured to add error correction codes to the packets being transferred over the channels to check the error correction codes in the packets being received over the channels and to transfer a retry request if one of the packets being received has an error."   It is unclear what the element "to check the error correction codes" modifies, as without a comma it could either modify why the error correction codes are added, or it could be a step in a list of actions taken by the interfaces.

Accordingly, claim 2 of the '442 Patent is invalid under at least 35 U.S.C. § 112, second

paragraph

2)      **U.S. Patent No. 6,633,945**

Asserted claims 1 and 6 are invalid under 35 U.S.C. § 112, first paragraph, as

lacking written description.  Each of the asserted claims recites "a third point-to-point

connection coupled to the first data switch and the second data switch."  The only

disclosure in the '945 Patent relating to the connection between the first data switch and

the second data switch discloses that "[t]he interconnection between FCUs are point to

point and fully connected. Each FCU has direction connection to all other FCUs."  ('945

Patent at 7:14-16).  The Patent Office raised a similar objection during the prosecution of

the '945 Patent, and the Applicant pointed to page 10, line 6 to page 11, line 39 of the

specification as filed, as well as Figure 12.  Neither the portion pointed to by the

Applicant nor the passage identified above provides sufficient written description to

allow one of skill in the art to practice the asserted claims.  Accordingly, claims 1 and 6

of the '945 Patent are invalid under at least 35 U.S.C. § 112, first paragraph.

Asserted claim 6 is invalid under 35 U.S.C. § 112, first paragraph, as lacking

written description.  claim 6 recites "interconnecting the first set of point-to-point

connections to the third point-to-point connection in the first data switch and

interconnecting the second set of point-to-point connections to the third point-to-point

connection in the second data switch to provide third data paths between the second

memory and the first set of processors and between the first memory and the second set

of processors."  The only disclosure in the '945 Patent relating to interconnecting the first

data switch and the second data switch discloses that "[t]he interconnection between

FCUs are point to point and fully connected. Each FCU has direction connection to all other FCUs." ('945 Patent at 7:14-16).  The Patent Office raised a similar objection during the prosecution of the '945 Patent, and the Applicant pointed to page 10, line 6 to page 11, line 39 of the specification as filed, as well as Figure 12.  Neither the portion pointed to by the Applicant nor the passage identified above provides sufficient written description to allow one of skill in the art to claim 6.  Accordingly, claim 6 of the '945 Patent is invalid under at least 35 U.S.C. § 112, first paragraph.

>   **3)**      **U.S. Patent No. 6,775,745**

Asserted claims 4-6 are invalid under 35 U.S.C. § 112, first paragraph as lacking written description and/or enablement.  Each of the asserted claims recite "a least frequently and least recently used file," which is not described in the specification of the '745 patent.  In contrast, the '745 patent describes illustrative examples, according to which either the least frequently used file or the least recently used file or none of the least frequently used file and the least recently used file are identified for elimination from the cache.

>   **4)**      **U.S. Patent No. 6,968,459**

Asserted claim 15 is invalid under 35 U.S.C. § 112, second paragraph, as indefinite.  Claim 15 states as follows, with italics and underlining added for emphasis as discussed below:

>   15. A method for accessing a storage device comprising:
>
>   [a] detecting a storage device within the storage drive;
>
>   [b] sensing whether a storage device has *device-specific security information* stored thereon;
>
>   [c] providing full-access to the storage device when the storage device has *the device-specific security information* by:

[c1] encrypting digital data using <u>the security information</u> during a
write access to write the digital data to the storage device; and

[c2] decrypting digital data using <u>the security information</u> during a
read access to read the digital data from the storage device; and

[d] providing restricted-access to the storage device when the storage
device does not store *the device-specific security information* by
preventing the digital data from being written to the storage device
during the write access.

'459 patent, claim 15.  As indicated in italics, element [b] includes the term, "device-specific security information," and elements [c] and [d] refer to "the device-specific security information."  As indicated by underlining, however, elements [c1] and [c2] refer to "the security information" without specifying that it is "device-specific"; "the security information" therefore lacks antecedent basis.  The absence of the "device-specific" modifier before "security information" in elements [c1] and [c2] makes it ambiguous whether "encrypting" and "decrypting" digital data must be performed using "*device-specific* security information" or some other form of security information.  The ambiguity is highlighted by the fact that the '459 patent states that various kinds of security information may be used to generate a cryptographic key to encrypt and decrypt data.  *See, e.g.*, '459 Patent at 3:62-4:5 (stating that the "cryptographic key is generated by combining one or more of the following: (1) device-specific security information …, (2) manufacturing information …, (3) drive-specific information …, and (4) user-specific information …").  Thus, the term "the security information" lacks antecedent basis and, when viewed in light of the intrinsic evidence, fails to inform those of skill in the art of the scope of the invention with reasonable certainty.

**F.**      **Preliminary Non-Infringement Claim Charts**

Charts identifying NetApp's preliminary non-infringement contentions for each asserted claim of the Patents-in-Suit are attached as Exhibits F-J.  In those attached claim charts, NetApp identifies the claim limitations that IV has failed to demonstrate are covered by the NetApp products that IV has identified as infringing.  NetApp's preliminary non-infringement contentions are based on IV's apparent interpretation of the asserted claims of the Patents-in-Suit, and NetApp reserves the right to respond further after claim construction, or if IV subsequently supplements its infringement contentions with more detail and evidence.

**G.**      **Document Production**

Concurrent with the service of these contentions, NetApp is producing documents that are relevant to its invalidity defenses on IV's counsel of record, with Bates Nos. NETAPP_000001-NETAPP_006049.  Additional prior art can also be found in the file histories for the Patents-in-Suit, which are incorporated herein by reference.

Dated:  December 16, 2016

/s/ *Christopher Centurelli*
Christopher Centurelli (BBO #640974)
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111
(617) 261-3276
(617) 261-3175 *Facsimile*
christopher.centurelli@klgates.com

Bryan J. Sinclair
(CA SB No. 205885) (*pro hac vice*)
Ranjini Acharya
(CA SB No. 290877) (*pro hac vice*)
K&L Gates LLP
630 Hansen Way
Palo Alto, CA 94304
(650) 798-6700
(650) 798-6701 *Facsimile*
bryan.sinclair@klgates.com
ranjini.acharya@klgates.com

*Attorneys for Defendant NetApp, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, a copy of **NetApp Inc.'s Preliminary Invalidity and Non-Infringement Contentions**, together with the attached Exhibits A-1-J were served via CM/ECF and electronic mail on all counsel of record for Plaintiffs Intellectual Ventures I, LLC and Intellectual Ventures II, LLC.

*/s/ Christopher Centurelli*
Christopher Centurelli